[No. C045858. Third Dist. Sept. 2, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES EDWARD KNIGHT, Defendant and Appellant.

## COUNSEL

Erik Nils Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, and Charles A. French, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**ROBIE, J.**—After the court denied his motion to suppress evidence, defendant James Edward Knight pled no contest to possessing a controlled substance with a firearm and possessing a controlled substance. The trial court placed him on three years' probation. Defendant contends the trial court erred in denying his motion to suppress evidence. We agree and shall reverse and remand the matter to the trial court to allow defendant to withdraw his plea.

### BACKGROUND

Defendant was charged with possession of a controlled substance with a firearm, transportation of a controlled substance, possession of a controlled substance, having a concealed firearm in a vehicle in violation of Penal Code[1] section 12025, subdivision (a)(1), and carrying "a loaded firearm on his/her person while in a public place and on a public street in an incorporated city, to wit, Cameron Park" in violation of section 12031, subdivision (a)(1). Defendant moved to suppress the evidence obtained as a result of his arrest. The testimony at the suppression hearing included the following:

On April 27, 2003, El Dorado County Sheriff's Deputy Mike Ford was working the graveyard shift with his partner, Deputy Matthew Foxworthy. At around 2:50 a.m., they drove past a Chevy Blazer parked on the side of the road on Cameron Park Drive near La Canada in El Dorado County. The Blazer had its headlights on and the passenger was standing outside the vehicle. The officers determined a "welfare check" was warranted and pulled up behind the vehicle. By the time the officers pulled up behind the Blazer, the passenger had climbed back inside the vehicle.

As Deputy Foxworthy approached the driver's door, he saw some shotgun shells sitting inside the vehicle. He asked the occupants if there was a gun in the vehicle and defendant, who was the passenger, responded "there was a

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

shotgun" and pointed down to the area around his feet. Deputy Foxworthy glanced down to where defendant pointed and, not being able to see the shotgun, informed Deputy Ford there was a gun in the vehicle. Both officers immediately drew their weapons and retreated back to the patrol car to establish cover and inform dispatch of the situation.

Deputy Foxworthy ordered the occupants out of the vehicle. Both defendant and the female driver complied and each were handcuffed and placed in the patrol car. Defendant told the officers there was also a handgun behind the passenger seat. The officers then searched the Blazer recovering a loaded shotgun next to the passenger seat. The officers then placed defendant under arrest for carrying a loaded firearm in a public place in violation of section 12031. The officers did not find a handgun in the vehicle.

Deputy Foxworthy spoke to defendant again, after a third officer found a black .22-caliber revolver off to the side of the road. Defendant then admitted he had lied about the handgun being in the Blazer as he had left it in the grass behind a green phone box. Deputy Foxworthy searched defendant and apparently discovered a substance believed to be methamphetamine in defendant's pocket.[2]

## DISCUSSION

Defendant contends the trial court erred in denying his motion to suppress the evidence resulting from the detailed search conducted incident to his arrest. We agree that such evidence must be suppressed. We explain.

### A

### *Standard of Review*

The standard of appellate review of a trial court's ruling on a motion to suppress is well settled. We view the record in the light most favorable to the trial court's ruling and defer to its findings of historical fact, whether express or implied, if they are supported by substantial evidence. We then decide for ourselves what legal principles are relevant, independently apply them to the historical facts, and determine as a matter of law whether there has been an unreasonable search and/or seizure. (*People v. Williams* (1988) 45 Cal.3d 1268, 1301 [248 Cal.Rptr. 834, 756 P.2d 221].)

---

[2] Evidence regarding the items discovered as a result of Deputy Foxworthy's search of defendant's person was not presented at the suppression hearing, but the methamphetamine was mentioned in defendant's written motion to suppress and the probation report.

■    Here, since the search was conducted without a warrant, the prosecution had the burden of showing the officers had proper justification. (*People v. Superior Court* (1970) 3 Cal.3d 807, 812 [91 Cal.Rptr. 729, 478 P.2d 449].) Defendant does not dispute the reasonableness of the initial detention or the search leading to the discovery of the loaded shotgun. But thereafter, the officers placed defendant under arrest for violation of section 12031, asked him questions and ultimately searched his person incident to his arrest. These actions defendant disputes.

## B

### *Was There Probable Cause to Arrest Defendant?*

■    If the officers had probable cause to arrest defendant, the search would have been justified as incident to a lawful arrest. (*People v. Superior Court, supra,* 3 Cal.3d at pp. 812–813.)    ■    A peace officer may arrest a person without a warrant whenever the person being arrested has committed a felony. (§ 836, subd. (a)(2).) A peace officer may also arrest a person without a warrant whenever the officer has probable cause to believe that the person arrested has committed a felony, whether a felony, in fact, has been committed. (§ 836, subd. (a)(3).) Probable or reasonable cause is "a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." (*People v. Ingle* (1960) 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].)

This case turns on whether the officers had probable cause to arrest defendant for violation of section 12031 and this turns on whether the prosecution established at the suppression hearing that defendant's possession of a loaded gun was a crime at the place defendant was detained.

At the suppression hearing the prosecution maintained the search was incident to defendant's lawful arrest for violation of section 12031. It failed, however, to establish defendant was lawfully arrested because it did not establish the encounter took place in an area where defendant was prohibited to carry a loaded firearm or that the officers reasonably believed defendant was in such an area.

Section 12031, subdivision (a)(1), consists of separate provisions related to incorporated and unincorporated areas of a county: "A person is guilty of carrying a loaded firearm when he or she carries a loaded firearm on his or her person or in a vehicle while in any public place or on any public street in an *incorporated city or* in any public place or on any public street in a prohibited area of *unincorporated territory.*" (Italics added.) Section 12031,

subdivision (f) provides that "[a]s used in this section, 'prohibited area' means any place where it is unlawful to discharge a weapon."

During cross-examination, defendant's counsel asked Deputy Ford if the area where he encountered defendant was part of an incorporated city. Deputy Ford did not know if the area was incorporated or not. Defense counsel then requested the court take judicial notice that the Cameron Park area is an unincorporated part of the county. The trial court asked if the prosecutor would stipulate to this but neither the court nor the prosecutor knew whether Cameron Park was incorporated.

Defense counsel then asked Deputy Ford whether there were any county ordinances that prohibited the discharge of a firearm in that area. The prosecutor objected to the relevance of the question. Defense counsel responded that section 12031 defined a prohibited area as one where it is unlawful to discharge a firearm. The prosecutor took the position that section 12031 prohibited carrying a loaded weapon in *any* public place. The trial court said it agreed with the prosecutor's interpretation of the statute but let defense counsel continue with his questioning. Deputy Ford then testified that he did not know whether there were any county ordinances that prohibited the discharge of a firearm in that area. Neither party questioned Deputy Foxworthy on these matters.

At the conclusion of the evidence, defense counsel argued again that section 12031 prohibited possession of a loaded firearm only while in an incorporated city or while in a prohibited area of an unincorporated territory. Thus, he argued the prosecution had not met its burden. The prosecutor maintained that section 12031 prohibited carrying a loaded weapon in *any* public place.

The trial court took the matter under submission and, thereafter, issued the following oral ruling:

"The facts in this case are that at about 2:30 in the morning officers observed the vehicle parked on the side of the road with the lights on. According to the officer, they pulled in behind the vehicle to do a welfare check. Upon approaching the passenger side of the vehicle, one of the officers sees in the rear section of the vehicle some shotgun ammunition.

"The officer asked the passenger, who was the Defendant, if any weapons were in the vehicle, to which the Defendant responded yes. The officers had a reasonable cause to believe that the crime of 12025.1 [*sic*] PC of the Penal Code was occurring in their presence and thus had the right to conduct a further investigation and to take all steps necessary for officer safety.

"The Defense argued at the hearing that 12031(a)(1) is dispositive in that it is not a crime unless the loaded firearm is carried in a vehicle 'on a public street in an incorporated city' or 'on a public street in a prohibited area of unincorporated territory.'

"12031(a)(1) states, 'A person is guilty of carrying a loaded firearm when he or she carries a loaded firearm on his or her person in a vehicle while in any public place. . . .'

"The motion is denied."

■  Thus, it appears the trial court erroneously adopted the prosecutor's position that section 12031 prohibits carrying a loaded weapon in *any* public place. Section 12031, subdivision (a)(1), however, does not criminalize the possession of a loaded firearm unless defendant carries it on his or her person or in a vehicle while in any public place or on any public street in an incorporated city *or* unless defendant carries it on his or her person or in a vehicle while in any public place or on any public street in a *prohibited* area of unincorporated territory.

While section 12031, subdivision (a)(1), with its lack of punctuation, is not a model of clarity, we must construe the statute according to its plain meaning. " 'The rules governing statutory construction are well settled. We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] "In determining intent, we look first to the language of the statute, giving effect to its 'plain meaning.' " [Citations.] Although we may properly rely on extrinsic aids, we should first turn to the words of the statute to determine the intent of the Legislature. [Citation.] Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' (*Ibid.*) [¶] 'If the statutory language is clear and unambiguous, there is no need for construction.' [Citation.]" (*Poliak v. Board of Psychology* (1997) 55 Cal.App.4th 342, 348 [63 Cal.Rptr.2d 866].)

In this case, the People seek to construe section 12031, subdivision (a)(1), in a manner that would prohibit the possession of a loaded firearm while in any public place, regardless whether it is an incorporated city or a prohibited area of an unincorporated territory. Such a construction would require that we ignore and give no effect to the language in the statute "in any public place" which is repeated prior to the clause "in a prohibited area of unincorporated territory."

However, "[w]ell-established canons of statutory construction preclude a construction which renders a part of a statute meaningless or inoperative."

(*Manufacturers Life Ins. Co. v. Superior Court* (1995) 10 Cal.4th 257, 274 [41 Cal.Rptr.2d 220, 895 P.2d 56]; see *Jackson v. Pierce* (1990) 224 Cal.App.3d 964, 970 [274 Cal.Rptr. 212].) Rather than rewrite the statute in any way, we adopt the interpretation that harmonizes the repeated clause "or in any public place or on any public street," without doing violence to the language of the statute itself or rendering portions of the language mere surplusage.

■ Applying this principle to give meaning to each word and phrase in the statute, section 12031, subdivision (a)(1), prohibits carrying a loaded firearm on one's person or in a vehicle: (1) while in any public place in an incorporated city; (2) while on any public street in an incorporated city; (3) while in any public place in a prohibited area of unincorporated territory; or (4) while on any public street in a prohibited area of unincorporated territory.[3]

■ With this construction of the applicable law in mind, we conclude that the prosecution did not meet its burden of justification at the suppression hearing. The prosecution did not establish that defendant's arrest was lawful (i.e., that the officers had reasonable cause to believe defendant had committed a felony), as it did not establish the encounter occurred in an incorporated city or a prohibited area of an unincorporated territory. Absolutely no evidence was presented at the suppression hearing that the place or street where defendant possessed the loaded firearm was in an incorporated city or a prohibited area of an unincorporated territory as required to violate section 12031, subdivision (a)(1). Nor was there any evidence that the officers were under a reasonable mistake of fact that the place or street was in an incorporated city or a prohibited area of an unincorporated territory.[4]

Accordingly, the trial court erred in denying defendant's motion to suppress directed at the evidence derived from the search incident to his arrest. (See *People v. Coe* (1991) 228 Cal.App.3d 526, 531 [279 Cal.Rptr. 362]; see also *Wong Sun v. United States* (1963) 371 U.S. 471, 487–488 [9 L.Ed.2d

---

[3] This construction is consistent with an opinion of the Attorney General issued in 1968, shortly after the enactment of section 12031. The Attorney General concluded "section 12031 does not prohibit the carrying of a rifle or shotgun with unexpended shells or cartridges in the magazine on a public road in an unincorporated area where there are no local ordinances or other laws or regulations prohibiting the discharge of firearms." (51 Ops.Cal.Atty.Gen. 197 (1968).)

[4] The People do not contend that the officers' mistake of law may justify the arrest and subsequent search. "[T]here is no good faith exception to the exclusionary rule for police who enforce a legal standard that does not exist." (*People v. White* (2003) 107 Cal.App.4th 636, 644 [132 Cal.Rptr.2d 371].) If the defendant has not actually broken a law, the officer's mistaken belief that there has been a violation does not provide the required objective facts leading to a reasonable belief. (See *In re Justin K.* (2002) 98 Cal.App.4th 695, 698–700 [120 Cal.Rptr.2d 546] and cases cited therein.)

441, 455, 83 S.Ct. 407].) Defendant must be allowed the opportunity to withdraw his plea and secure suppression of the evidence as his counsel requested.

## DISPOSITION

The judgment is reversed and the cause remanded to the trial court. Upon motion by defendant within 30 days of the date the remittitur is filed in the superior court, the court shall vacate defendant's no contest plea. The court is then directed to suppress the evidence uncovered as a result of defendant's arrest.

Raye, Acting P. J., and Butz, J., concurred.

A petition for a rehearing was denied September 16, 2004.