Filed 2/4/16  P. v. Lorrain CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C077758 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF13456) |
| v. | |
| JAMES TODD LORRAIN, | |
| Defendant and Appellant. | |

After the trial court denied his motions to suppress evidence and quash a search warrant, defendant James Todd Lorrain pled no contest to transportation of methamphetamine, possession of methamphetamine for sale, possession of a false compartment designed for storing controlled substances, and possession of controlled substance paraphernalia.  In his plea, defendant admitted, among other enhancements, one prior strike conviction.

1

Prior to sentencing, defendant submitted a *Romero*[1] motion, asking the court to dismiss his prior strike. The court denied defendant's *Romero* motion and sentenced him to 16 years in prison.

On appeal, defendant contends the trial court erred when it denied his motion to suppress and motion to quash. Defendant additionally argues the trial court abused its discretion in denying his motion to dismiss his prior strike conviction. We disagree and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

A few weeks before the date of the offenses at issue here, City of Davis Police Officer Justin Infante responded to a call regarding the burglary of a storage unit in which, among other things, a custom knitted blanket was reported stolen. On January 31, 2013, the victim of that burglary was at the storage facility when he observed his custom knitted blanket hanging in an open storage unit, later determined to be rented to Amanda Steele-Pfleger. The victim saw one female and one male standing near the open unit, later identified as Steele-Pfleger and defendant. A vehicle, subsequently determined to be registered to defendant, was parked within five feet of the unit. The victim contacted the police and Officer Infante and Corporal Jeff Beasley reported to the storage facility.

Upon arriving at the storage facility, the officers saw a custom knitted blanket along with two methamphetamine pipes in Steele-Pfleger's unit. The officers detained defendant in a patrol car for suspected involvement with the stolen property, and they arrested Steele-Pfleger on an outstanding warrant and placed her in a separate patrol car. While waiting in the patrol car, Steele-Pfleger summoned Officer Infante through the car's open window, accused defendant of being "a big dope dealer," and said defendant had narcotics inside his vehicle "under the power window control panel [on] the driver

---

[1] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

2

side door." Officer Infante then inspected defendant's vehicle by "manipulat[ing] the control panel to see if it was loose or had been tampered with." The control panel easily popped off and Officer Infante saw a round, black case inside the panel. Officer Infante retrieved the case, opened the top, and observed what he believed to be methamphetamine. Defendant was then placed under arrest for possession of methamphetamine for sale and possession of methamphetamine pipes.

Officer Infante gave the suspected methamphetamine to Yolo County Narcotics Enforcement Team Agent Ryan Bellamy. Agent Bellamy tested and weighed the suspected narcotics and found the seized baggies weighed 3.3, 2.5, 3.5, 3.5, and 3.5 grams respectively and returned positive color reactions for methamphetamine. Agent Bellamy then obtained a search warrant for defendant's residence based upon the above information. Upon the warrant's execution, officers found what they believed to be two pay/owe sheets, individual bags containing a white powder that did not produce a positive color reaction for methamphetamine or cocaine, a methamphetamine smoking pipe, numerous surveillance cameras, and a handwritten note of the address of Steele-Pfleger's storage unit.

The prosecution charged defendant with transportation of methamphetamine, possession of methamphetamine for sale, possession of a false compartment designed for storing controlled substances, and possession of controlled substance paraphernalia. Defendant moved to suppress all evidence seized from his vehicle and moved to quash the search warrant. At the suppression hearing, the trial court ruled Officer Infante did not conduct a search when he manipulated defendant's vehicle door panel, but upon doing so and seeing the container within, had probable cause to search the container. Based on the court's finding that no illegal search occurred, the court denied defendant's motion to quash. Defendant subsequently pled no contest to all charges and admitted having a prior strike within the meaning of the three strikes law.

Before sentencing, defendant submitted a *Romero* motion, requesting the court dismiss his prior 1986 strike conviction for burglary. The trial court denied defendant's motion and sentenced him under the three strikes law to 16 years, four months in prison. This timely appeal followed.

## DISCUSSION

### I

*The Motion To Suppress And The Motion To Quash Were Properly Denied*

Defendant first argues the trial court erred when it held Officer Infante did not conduct a search when he dismantled defendant's vehicle door panel. Secondly, he contends the trial court erred in denying his motion to suppress because no exception to the warrant requirement would have permitted the warrantless search of his vehicle. Lastly, defendant argues it was error to dismiss his motion to quash the search warrant for his home because the warrant was tainted by the illegal search of his vehicle. We agree with defendant's first argument, but disagree with his latter two.

"The standard of appellate review of a trial court's ruling on a motion to suppress is well settled. We view the record in the light most favorable to the trial court's ruling and defer to its findings of historical fact, whether express or implied, if they are supported by substantial evidence. We then decide for ourselves what legal principles are relevant, independently apply them to the historical facts, and determine as a matter of law whether there has been an unreasonable search and/or seizure." (*People v. Knight* (2004) 121 Cal.App.4th 1568, 1572.)

### A

*Officer Infante Conducted A Search When He*
*Manipulated Defendant's Vehicle Door Panel*

Defendant argues, and the People properly concede, that Officer Infante's manipulation of defendant's vehicle door panel was a search within the meaning of the Fourth Amendment. The Fourth Amendment states, in relevant part, that "[t]he right of

people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." (U.S. Const., 4th Amend.) It is well recognized that a person's vehicle is considered an effect within the meaning of the Fourth Amendment. (*United States v. Jones* (2012) 565 U.S. ___ [181 L.Ed.2d 911, 917-918].) It is likewise established that a government's trespassory, physical intrusion of a person's effect is a search under the Fourth Amendment. (*Id.* at pp. ___-___ [181 L.Ed.2d at pp. 918-922].) Thus, Officer Infante's entry into defendant's vehicle and physical dismantling of his door panel was a clear search under the Fourth Amendment.

B

*The Search Of Defendant's Vehicle Was Reasonable*

The People assert the search of defendant's vehicle was justified under the automobile exception to the warrant requirement.[2] We agree.

A warrantless search of an automobile is reasonable within the meaning of the Fourth Amendment when an officer has probable cause to believe the vehicle contains contraband. (*United States v. Ross* (1982) 456 U.S. 798, 824 [72 L.Ed.2d 572, 593].) "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." (*Id.* at p. 825 [72 L.Ed.2d at p. 594].) Whether there is probable cause to search a car is governed by the same standards as any other probable cause determination: could a neutral and detached magistrate make a decision, considering the totality of the circumstances, "including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, [that] there is a fair probability that contraband or evidence of a

---

[2]    The People also argue the search was justified as a search incident to arrest and an inventory search. Because we conclude the search was lawful under the automobile exception, we do not address the People's two other justifications for the search.

5

crime will be found in a particular place[?]" (*Illinois v. Gates* (1983) 462 U.S. 213, 238 [76 L.Ed.2d 527, 548].)

Defendant argues probable cause to search his vehicle did not exist because the information concerning the locality of the methamphetamine came from an unreliable and untested informant whose statement was not corroborated before the search occurred. Defendant relies on *People v. Lissauer* (1985) 169 Cal.App.3d 413 to support his contention. In *Lissauer*, an untested informant provided information concerning the defendant's involvement in drug sales. (*Id.* at p. 417.) Law enforcement officers set up surveillance on the defendant's house, followed his car, stopped and searched his car, and found contraband in the backseat. (*Id.* at p 418.) The defendant pled guilty to possession of marijuana after the trial court denied his motion to suppress the evidence found in his vehicle during the warrantless search. (*Id.* at p. 416.)

The *Lissauer* court stated that in determining whether " 'there is a fair probability that contraband or evidence of a crime will be found in a particular place[,]' " "the 'veracity' and 'basis of knowledge' of [an] informant must be assessed" alongside any corroboration of an untested informant's tip. (*People v. Lissauer*, *supra*, 169 Cal.App.3d at p. 422, quoting *Illinois v. Gates*, *supra*, 462 U.S. at p. 238 [76 L.Ed.2d at p. 548].) The court held probable cause to search the defendant's vehicle did not exist, reasoning the circumstances known to officers did not establish the reliability of the informant, despite the information being corroborated. (*Id.* at p. 423.) The court noted the informant's information was "such as could be acquired by any casual observer" and the basis of the informant's knowledge and the informant's relationship with the defendant was never determined. (*Ibid.*)

While it is true Officer Infante had no prior interaction with Steele-Pfleger, thereby making her an untested informant, defendant is mistaken in assuming Steele-Pfleger was an unreliable informant whose information could not serve as a basis for probable cause. In contrast to *Lissauer*, where the untested informant provided only a

6

vague statement that the defendant was engaged in selling drugs, Steele-Pfleger's statement was very specific and not information that would be known by a casual observer, but someone who was close with defendant. Similarly, unlike *Lissauer* where officers were unaware of the informant's basis of knowledge, the surrounding circumstances in the present case could have reasonably led Officer Infante to infer that Steele-Pfleger knew about the hidden methamphetamine because she was a companion of defendant. Defendant and Steele-Pfleger were reportedly seen at the storage facility together by the victim of the prior burglary and Officer Infante and Corporal Beasley contacted the two together at the unit, thus providing a basis upon which Officer Infante could reasonably infer the two had some type of relationship. Secondly, only defendant's vehicle was at the facility, creating an inference that the two arrived at the unit together and supporting the belief that the two were companions. Given the specificity of Steele-Pfleger's statement and the fact defendant was with Steele-Pfleger at her storage unit, Officer Infante could have reasonably inferred that Steele-Pfleger knew about the methamphetamine in the vehicle door panel because she was a companion of defendant, and thus provided reliable information.

Because we conclude Officer Infante could have reasonably inferred the basis of Steele-Pfleger's information was reliable, we conclude her statement regarding the presence of methamphetamine in defendant's vehicle coupled with Officer Infante seeing two methamphetamine pipes in the storage unit where defendant was standing indicates a "fair probability that contraband or evidence of a crime w[ould] be found in" defendant's vehicle. (*Illinois v. Gates*, *supra*, 462 U.S. at p. 238 [76 L.Ed.2d at p. 548].) As such, Officer Infante could legally search the vehicle's control panel and the contents within the panel that could conceal the object of the search. Thus, defendant's motion to suppress was properly denied. Furthermore, since we conclude the search of defendant's vehicle was lawful, the search warrant for defendant's residence was not tainted by any illegality, so the motion to quash the search warrant was also properly denied.

7

II

*The Trial Court Did Not Abuse Its Discretion*

*When It Denied Defendant's Romero Motion*

Defendant argues the trial court abused its discretion by failing to dismiss his prior strike conviction. We disagree. Trial courts have discretion under Penal Code section 1385 to dismiss a prior strike when a court finds a defendant falls outside the spirit of the three strikes law. (Pen. Code, § 1385; *People v. Superior Court* (*Romero*), *supra*, 13 Cal.4th at pp. 529-530.) In deciding whether to exercise this discretion, the court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

Appellate courts review a trial court's "failure to dismiss or strike a prior [felony] conviction allegation . . . under the deferential abuse of discretion standard." (*People v. Carmony* (2004) 33 Cal.4th 367, 374.) A trial court will not abuse its discretion "unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.) As such, "a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances." (*Id.* at p. 378.)

Defendant has the following criminal record: a 1986 conviction for burglary, resulting in a strike; a 1987 misdemeanor conviction for possession of a controlled substance; a 1988 misdemeanor conviction for trespassing; a 1990 misdemeanor conviction for being under the influence of a controlled substance; three 1991 convictions for selling or distributing hypodermic needles without a license, possession of a controlled substance, and transporting a controlled substance for sale; a 1992 felony conviction for possession of a controlled substance; a 1994 felony conviction for

possession of a controlled substance for sale; a 1996 trespassing conviction; a 1997 felony conviction for possession of a controlled substance; and three 2003 convictions for possession of a controlled substance, possession of a device used to inject or smoke a controlled substance, and transporting a controlled substance, for which he was sentenced to six years in prison. Defendant was not convicted of another offense until the present case. While released on bail in this case though, defendant was arrested on two separate occasions. As a result of these arrests, defendant has been charged with possession of a controlled substance, possession of marijuana for sale, and possession of methamphetamine for sale in one case; and, in a separate case, he has been charged with possession of methamphetamine for sale.

Defendant argues the remoteness of his prior strike and the nonviolent nature of his prior offenses take him outside the spirit of the three strikes law. Defendant emphasizes that his one strike occurred when he was 18 years old and stole a VCR from his parents' home, and he asserts his criminal history is a result of a lifelong struggle with drug addiction. However, these contentions amount to a simple disagreement as to the conclusion the trial court drew from the facts, as the record reflects the trial court considered both the remoteness of defendant's strike along with the nonviolent nature of his prior convictions when analyzing his *Romero* motion. The trial court noted his "original conviction . . . is somewhat mitigating from the standpoint that he was young, that he was apparently using drugs, and he just stole a VCR. [¶] . . . [¶] [And, the] incident happened 28 years ago." Additionally, the trial court acknowledged that his numerous convictions were "pretty much all drug related, some personal use, [and] some sales related." Despite these acknowledgments, the trial court ultimately concluded these factors did not outweigh defendant's inability to live a "legally blameless life up to [the current] offense or since [the current] offense" and thus, denied defendant's *Romero* motion.

9

The standard for abuse of discretion is not reasonable disagreement, but manifest irrationality or arbitrariness. (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.) Because, as we explain, the trial court's conclusion not to grant defendant's *Romero* motion was not irrational or arbitrary, we are not authorized to substitute our judgment for the judgment of the trial judge. (*Ibid.*)

Defendant has demonstrated a continuous inability to reform his behavior to that of a law-abiding citizen. Although he exhibited a period of lawfulness between his release from prison in 2008 and his arrest for the current offense in 2013, it is clear from his criminal history that, as the trial court noted, he has not lived a "legally blameless life up to [the current] offense or since [the current] offense." Only under extraordinary circumstances may "a career criminal . . . be deemed to fall outside the spirit of the very scheme within which he squarely falls." (*People v. Strong* (2001) 87 Cal.App.4th 328, 338.) As such, we cannot conclude the trial court's judgment that defendant's proclivity for crime outweighed other mitigating factors was so irrational or arbitrary as to amount to an abuse of discretion.

DISPOSITION

The judgment is affirmed.

/s/_____
Robie, J.

We concur:

/s/_____
Nicholson, Acting P. J.

/s/_____
Butz, J.

10